627 A.2d 231

**Jean A. CRAMER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (UNI–MARTS and the PMA Group), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 1993.

Decided June 14, 1993.

---

Fred H. Hait, for petitioner.

Daniel K. Deardorff, for respondents.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Jean A. Cramer (Claimant) appeals from the order of the Workmen's Compensation Appeal Board (WCAB) that affirmed the referee's order terminating[1] Claimant's benefits. We reverse and remand.

Claimant worked as a convenience store clerk for Uni-Marts (Employer), a job which required substantial periods of standing and walking. On November 29, 1988, a milk crate fell on Claimant's foot in the course of her employment. Claimant continued working until January 5, 1989, when her physician recommended that she stop working because her injury had not healed, and in fact, had become worse. Claimant was off from January 5, 1989 to January 18, 1989, during which time she received compensation for total disability. On January 19, 1989, Claimant returned to work until January 26, 1989, when she quit following a heated argument with her supervisor over matters unrelated to her injury.

On April 3, 1989, Employer filed a petition to terminate or modify compensation, alleging that Claimant had returned to work at wages equal to or greater than her pre-injury wage on January 19, 1989. Claimant filed an answer, admitting that she did return to work, but denying that Employer was entitled to suspension or termination in that her disability had recurred.

Two physicians were familiar with Claimant's condition on her last day of work. Both Richard Stater, M.D., who testified for Employer and William A. Kramer, M.D., who testified for Claimant, agreed that as of that date Claimant was physically capable of performing her job. However, Dr. Kramer, who continued to examine and treat Claimant after that date, testified that after Claimant stopped working, her condition deteriorated and Claimant became totally disabled as of February 14, 1989.

On September 15, 1989, Claimant began treating with Douglas Sanderson, M.D., an orthopedic surgeon. On that date,

---

1. The WCAB, while affirming the referee's order, in fact amended the referee's order and merely suspended Claimant's benefits.

Dr. Sanderson noted Claimant had obvious swelling of the left lower leg, ankle, foot and knee, as well as various subjective symptoms. Dr. Sanderson opined that Claimant's symptoms were caused by her November 29, 1988 work-related injury. Dr. Sanderson was not asked to express an opinion as to Claimant's condition or ability to work as of any date prior to September 15, 1989.

> The referee made the following pertinent findings of fact:
> 10. Claimant also presented the testimony of Dr. Sanderson. [Claimant] began treating with Dr. Sanderson on September 15, 1989. Dr. Sanderson diagnosed claimant's condition as chronic strain of the lower extremity muscles.
> 11. Dr. Sanderson opined that claimant was disabled from her usual job and that she remained disabled as of April 24, 1990.
> 12. Your Referee finds the testimony of Dr. Sanderson not credible as it is incompetent. Dr. Sanderson did not start treating claimant until September of 1989. Moreover, Dr. Sanderson's opinion was not based on objective evidence.

The referee made no findings as to whether or not Claimant's disability had recurred at any time after her last day of work and terminated all benefits.

On appeal, the WCAB affirmed holding that Employer had met its burden on the "petition for suspension of compensation."[2]

On appeal to this Court,[3] Claimant argues that the referee erred in: 1) rejecting Dr. Sanderson's testimony as incompetent; and 2) failing to make a finding concerning recurrence of Claimant's injury.

■ Claimant offered the testimony of Dr. Sanderson in support of her contention that her disability had recurred. Dr. Sanderson first examined Claimant on September 15,

---

2. *See* n. 1.

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

1989. Dr. Sanderson assumed for the purposes of rendering his opinion: 1) that Claimant was injured when a milk crate fell on her foot; and 2) the general description of Claimant's job duties. Otherwise, Dr. Sanderson's opinion was based upon physical findings when he examined Claimant on September 15, 1989. The referee ruled that Dr. Sanderson's testimony was incompetent because he did not examine Claimant until September 15, 1989, and because, in the referee's estimation, the doctor had based his opinion upon subjective evidence. We do not agree.

Unlike credibility, which is a question of fact, competency is a pure question of law, fully subject to our review. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). Competency when applied to medical evidence, is merely a question of whether the witnesses' opinion is sufficiently definite and unequivocal to render it admissible. Our review of the record finds nothing indefinite, uncertain or equivocal about Dr. Sanderson's opinion that Claimant had suffered a recurrence of her injury. Employer asserts, however, that Dr. Sanderson's opinion is incompetent because it was based upon an incorrect assumption, i.e., that Claimant had told Dr. Sanderson she left the job because of increasing symptoms and not because of unrelated issues. Employer relies upon *Hawkins v. Workmen's Compensation Appeal Board (Medical College of Pennsylvania)*, 138 Pa.Commonwealth Ct. 180, 587 A.2d 387 (1991), for support of its position. In *Hawkins*, this Court overlooked the referee's use of the "incompetent disqualification" for the Claimant's expert, noting this was harmless error because the referee had the right to reject the medical expert on the basis that he had made certain false assumptions. We held in *Hawkins* that the reliance on a false assumption made the medical expert's testimony "valueless." However, here, any false assumption, i.e., the reason Claimant terminated her employment, is irrelevant to the fact that Claimant may have suffered a recurrence in Dr. Sanderson's opinion. Therefore, we hold that the WCAB erred in affirming the referee's finding that Dr. Sanderson's testimony was not credible because it was incompetent.

■ Claimant claims, therefore, that because Dr. Sanderson testified that she suffered a recurrence that she is entitled to benefits. However, it is for the referee to make a finding as to Dr. Sanderson's credibility and is not within this Court's power. The referee must determine whether Claimant's assertion that she suffered a recurrence is supported by credible evidence and if Dr. Sanderson's testimony is credible. If the referee does find Dr. Sanderson's testimony credible, then it must be determined on what date such alleged recurrence took place.

Accordingly, we vacate the order of the WCAB and remand the case for findings consistent with this opinion.

### ORDER

AND NOW, this 14th day of June, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby vacated and the case is remanded for findings consistent with the foregoing opinion.

Jurisdiction relinquished.